UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BAHIG F. BISHAY,<br>    Plaintiff<br><br>v.<br><br>THE COMMONWEALTH OF MASSACHUSETTS,<br>    Defendant | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>) |

## COMPLAINT

Now comes Plaintiff Bahig F. Bishay and respectfully submits this *Complaint*, which seeks, among other things, declaratory relief and monetary damages.

### Parties

2.   Plaintiff Bahig F. Bishay ("Bishay") is an individual with a last and usual address of P.O. Box 396, Norwood, MA 02062.

3.   Defendant Commonwealth of Massachusetts ("The Commonwealth") is a state within the United States; political community founded for the common good of its residents; and in this action is treated as the appointing authority and employer of the judicial body mentioned below; the actions or inactions of whom and which is the subject of this *Complaint*. The Commonwealth's governor's last and usual address is Massachusetts State House, Office of the Governor, Room 280, Boston, MA 02133.

### Jurisdiction

4.   Jurisdiction is conferred upon this Court, pursuant to 28 U.S.C. § 1331, et seq.. Venue is properly laid upon this Court, pursuant to 28 U.S.C. § 1391(b), et seq..

### Facts

5.   Bishay is a *"natural"* person, and the below allegations are set forth in said capacity.

6.   On or about October 11, 2000, Bell Atlantic Yellow Pages, Inc. ("BAYP") filed a *Complaint for Receiver* against U.S. Auto Exchange Group, Ltd. ("USAX") in Essex Superior Court, within The Commonwealth, docket number 2000-1838-C, (the "Essex Litigation"), where BAYP sought the appointment of a receiver to collect a judgment BAYP held against USAX, initially in the amount of $36,000, but ultimately $23,000.

7.    At all relevant times USAX was a "corporate" entity organized under the laws of The Commonwealth. Bishay was an officer and a shareholder of USAX.

8.    On or about June 28, 2001, the court in the Essex Litigation appointed Wayne Morrison, Esq., receiver (the "First Receiver"). The First Receiver's duties included collecting and taking charge of all of USAX's assets.

9.    On August 10, 2001, the First Receiver filed the Receiver's First Report, whereupon he attached an inventory of USAX's assets sufficient to pay USAX's debt.

10.    Thereafter, however, and despite the assets belonging to USAX which had been identified by the First Receiver, BAYP moved to have Bishay (the natural person) added to the USAX receivership, alleging that Bishay had personally guaranteed USAX's obligations to BAYP and that Bishay and USAX were improperly commingled. BAYP did not produce any credible evidence to support its allegations.

11.    Bishay, on the other hand, submitted a sworn affidavit and supporting documents which showed, *inter alia*, that (i) there was no intermingling of assets between him and USAX; (ii) he never personally guaranteed the underlying advertising agreement between BAYP and USAX; (iii) he only offered (on a voluntary basis) to pay USAX's advertising bill, if he could. more than a year after the USAX debt had been incurred; and (iv) that USAX was a Massachusetts "corporation" with multiple shareholders.

12.    Neither BAYP nor the First Receiver challenged Bishay's opposition and objection, his sworn affidavit or the supporting documents Bishay appended thereto.

13.    The Commonwealth, and despite the foregoing, directed the First Receiver to take all of Bishay's personal assets. On September 5, 2001, The Commonwealth wrote:

It is ORDERED and ADJUDGED: 1. That until further order of the court, Esquire, of ... be and hereby is appointed Receiver of the estate, **property**, **moneys,** debts and **effects** of every kind and nature of or belonging to the defendant, **Bahig F. Bishay**; and he is hereby authorized and directed to collect, get in. and take charge of all and singular thereof, and to **hold** the same subject to the further order of this court. 2. That said defendant, its officers, servants, agents and attorneys, and each of them are hereby required and ordered to deliver to said receiver all the property, **moneys,** stock in trade and **affects** of every kind and nature, belonging to said defendant in their hands, possession, or control, together with all books, deeds, documents, vouchers, and papers relating thereto, and the said defendant and its officers, servants, agents and attorneys, and each of them, are **hereby restrained and enjoined** from collecting any of the debts or accounts due to the said defendant and **from using, spending,** injuring, conveying, transferring, selling, **or in any manner disposing of or encumbering** any of the effects or property aforesaid, **except to deliver them into the hands of said**

**receiver**.... [Emphasis supplied]

14.     On or about January 16, 2002, USAX filed for bankruptcy protection, whereupon the United States Bankruptcy Court, District of Massachusetts, became the exclusive authority over USAX. Case No. 02-10310-CJK. The receivership proceedings, however, continued by The Commonwealth despite the Bankruptcy Court's authority over USAX.

15.     The First Receiver filed his Final Report on or about April 1, 2002, where he stated that USAX was in bankruptcy and that Bishay and BAYP resolved their differences. He also filed an executed Stipulation of Dismissal between Bishay and BAYP. Ultimately, however, the Final Report was withdrawn.

16.     The First Receiver then filed his Second Final Report in or about June 2003, and in that report, together with a Stipulation of Dismissal appended thereto, he confirmed that BAYP's claim against USAX was settled without having to take possession of any of Bishay's assets. In the same report, the First Receiver also confirmed that since no other creditors were allowed to intervene in the USAX receivership, that he (the First Receiver) should be discharged from his duties as receiver.

17.     Thereafter, however, BAYP moved to have a Substitute Receiver appointed despite the Bankruptcy Court's exclusive jurisdiction over USAX, despite the fact that BAYP's claim had already been settled, despite the *Stipulation of Dismissal* which had been filed, and despite the fact that BAYP had no further claims either against USAX or Bishay.

18.     By an order dated July 31, 2003, The Commonwealth allowed BAYP's motion to keep the USAX receivership alive. The Commonwealth also permitted BAYP (although BAYP's claim had been settled with The Commonwealth's approval) to elicit a new group of creditors. The new group held no claims against USAX but was permitted by The Commonwealth to assert claims against Bishay, individually, purporting that Bishay owed debts unrelated to USAX.

19.     Although BAYP's claim had been settled with the approval of The Commonwealth, BAYP petitioned The Commonwealth to appoint an attorney named Jonathan D. White as Substitute Receiver (the "Substitute Receiver"). BAYP, however, did not disclose that this specific individual was an office-mate of BAYP's counsel in the same case.

20.     Having learned of this potential conflict, Bishay took it upon himself to see if this Substitute Receiver was included in the approved "*Court's List*", pursuant to the applicable rules of Massachusetts Supreme Judicial Court ("SJC")? Specifically Rule 1:07; Rule 1:07(2); and Rule 1:07 (4). Bishay also wanted to determine whether the Substitute Receiver ever served in the capacity of "*receiver*" at any time? Bishay reported to The Commonwealth that the Substitute Receiver was **not** included in the approved *Court's List*. Bishay also reminded The Commonwealth of the specific rules promulgated by the SJC (*supra*), which required the appointing authority to write up an explanation of why this individual was appointed outside the *Court's List*. The Commonwealth ignored

all of Bishay's notices relative to the Substitute Receiver's qualifications or lack thereof.

21.    Bishay then filed numerous motions to disqualify the Substitute Receiver, where Bishay argued that said appointment was a nullity, *ab initio.* The Commonwealth, however, and notwithstanding the uncontroverted evidence Bishay submitted to numerous trial court justices, Massachusetts Appeals Court and the SJC (the author of these relevant rules), unilaterally denied all said motions, appeals, and Bishay's petition for Further Appellate Review. Notwithstanding this fundamental threshold, procedural infirmity, the Substitute Receiver remains employed in this case by The Commonwealth.

22.    The Commonwealth's actions caused Bishay to remain besieged in what became a personal receivership, for approximately ten years, and pursuant to the 2001 Order Bishay remains enjoined and restrained from using any of his personal funds, half of which belongs to his non-debtor spouse. More than $2.5 million in cash plus other property has been held by The Commonwealth, and Bishay continues to be restrained and enjoined from using any of these personal assets. Bishay has also been restrained and enjoined from borrowing any money to start a new business, as he did for more than thirty years.

23.    The Commonwealth also permitted the taking of Bishay's home where he and his family lived for thirty years, and directed the distribution of vehicles and other personal property belonging to Bishay and his non-debtor spouse to individuals and entities who held neither a judgment nor execution against Bishay.

24.    When The Commonwealth placed Bishay in receivership in 2001, it was presumed to know that its receivership law was not intended for individuals ("natural" citizens).

25.    The Commonwealth's receivership law was only intended for corporations and health maintenance organizations ("HMO"), pursuant to M.G.L. c. 111, § 75. The liquidation or rehabilitation of HMOs, pursuant to M.G.L. c. 175, § 180B and M.G.L. c. 176G, § 20. Land and eminent domain disputes, pursuant to M.G.L. c. 156, § 151 and c. 156B, § 105. There are no laws within The Commonwealth which permit "personal" receiverships for the sole purpose of collecting ordinary, "unsecured", *personal* debt.

26.    Bishay repeatedly reminded The Commonwealth that the proper statute in collection matters involving natural citizens, specifically, is *Massachusetts General Law, Chapter 224, Section 14,* and not the receivership statutes listed in the preceding paragraph. Bishay also reminded The Commonwealth that not a single creditor held a claim, judgment, or execution, which could not be collected under the applicable law, M.G.L., c. 224, § 14 (*Id*), and none sought said remedy prior to placing Bishay in receivership.

27.    The Commonwealth denied all of Bishay's pleas and kept him in state-court receivership for approximately ten years, with no legal or equitable authority cited to justify these actions. Said receivership remains pending in full force and effect as of this writing.

28.     To mitigate the substantial damages Bishay and his family continued to suffer during this besiegement, in 2007 and 2008 Bishay wrote to the Chief Justice of The Commonwealth's Superior Court, asking for an immediate intervention to spare him and his family from said damages. The Chief Justice declined to get involved in this matter.

29.     In 2009 and 2010 Bishay sought appellate review of this serious matter.  Both Massachusetts Appeals Court and the Supreme Judicial Court also denied Bishay's pleas.

30.     There is no black-letter law or caselaw ever cited by The Commonwealth to justify its decision to place and keep Bishay, the natural person, in receivership for approximately ten years, for the sole purpose of collecting ordinary, unsecured, personal debt.

31.     The only time an individual within The Commonwealth was placed and kept in receivership was when, based on the preponderance of the evidence, it was determined that the individual engaged in criminal activities, such as the "*fraudulent conveyance*" of corporate assets, for example.  The Commonwealth was well aware that none of these acts were present in the Bishay receivership.

32.     When The Commonwealth placed Bishay in receivership in 2001, and kept him incarcerated in a state-court receivership for ten years, and counting, it was presumed to know that it inflicted substantial financial and personal harm on Bishay and his family.

33.     When The Commonwealth striped Bishay from his financial liberty, and freedom, and did so for ten years, and counting, it was presumed to know that it bestowed substantial financial and personal harm on Bishay and his family.

34.     The Commonwealth's actions and inactions violated Bishay's *civil liberties* and inflicted substantial financial and personal harm on Bishay and his family.

35.     The Commonwealth's actions and inactions violated Bishay's *civil rights* and inflicted substantial financial and personal harm on Bishay and his family.

## COUNT-1
### Declaratory Judgment holding that
### The Commonwealth's actions violated the 5th and the 14th
### Amendments to the Constitution of the United States of America

36.     The Commonwealth's actions, including but not limited to incarcerating Bishay in a state-court receivership; and repeatedly denying Bishay's plea[s] for the release of a modicum of his money so that Bishay could defend himself by hiring competent counsel to do so, violated Bishay's *due process* rights, guaranteed to every lawful citizen, as reflected in the 5th and the 14th Amendments to the Constitution of the United States of America.  Bishay repeats and realleges paragraphs 1 through 35, as if restated herein in their entirety.

## COUNT-II
### Declaratory Judgment holding that
### The Commonwealth's actions were deliberate
### and caused quantifiable financial harm

37.     The Commonwealth's actions were *ultra virus, ab initio.* Bishay repeats and realleges paragraphs 1 through 36, as if restated herein in their entirety.

**WHEREFORE,** Bishay respectfully requests that this Honorable Court:

a.      Enter a declaratory judgment confirming that The Commonwealth violated Bishay's *civil liberties, civil rights,* his right to *due process,* and the 5th & 14th Amendments to the Constitution of the United States of America;

b.      Order that the personal receivership of Bishay was *ultra virus, ab initio*;

c.      Order that the appointment of the Substitute Receiver was a nullity, *ab initio;* effectuated in violation of The Commonwealth's own rules;

d.      Order that Bishay's personal property be returned to him and his non-debtor spouse;

e.      Order that The Commonwealth compensate Bishay for the loss of business opportunities during the financial incarceration in a state-court receivership, the personal damages Bishay sustained as a direct result of being wrongfully besieged in a state-court receivership, which Bishay expects will far exceed ten million dollars; and

f.      Grant any such other relief this Honorable Court deems appropriate based on the aforementioned circumstances.

### JURY DEMAND

Bishay respectfully demands a trial by jury on all issues so triable.

Dated: October 7, 2010

Respectfully submitted,
BAHIG F. BISHAY, *pro se*


Bahig F. Bishay
P.O. Box 396
Norwood, MA 02062
Tel: 781.326.3310
Email: BFBishay@earthlink.net


## VERIFICATION

I, Bahig F. Bishay, hereby depose and say that: I am the Plaintiff in the above captioned matter. My current mailing address is P.O. Box 396, Norwood, Massachusetts 02062. I have read the foregoing *Complaint*, and am familiar with the details of the issues raised herein. The information submitted above is true, to the best of my knowledge, except as to matters herein stated to be alleged upon information and belief, reasonable presumptions and conclusions.


Bahig Bishay


## CERTIFICATE OF SERVICE

I hereby certify that I caused true and accurate copies of this document to be served upon Deval Patrick, Governor of The Commonwealth, and on the Attorney General for The Commonwealth, Martha Coakley, Esq., by depositing same into the hands of United States marshal, this 7th day of October, 2010.


Bahig Bishay